UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KAREN A. BIERNACKI,

                              Plaintiff,

                                                          Case # 15-CV-331-FPG
v.

                                                          DECISION & ORDER

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

                              Defendant.

## INTRODUCTION

Plaintiff Karen A. Biernacki ("Plaintiff") brings this action to challenge the final decision of the Acting Commissioner of Social Security ("the Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"). ECF No. 1. The Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ECF Nos. 6, 8. On September 15, 2016, the Court heard oral argument from both parties regarding their respective motions. For the reasons stated below, Plaintiff's motion (ECF No. 6) is GRANTED, the Commissioner's motion (ECF No. 8) is DENIED, and this matter is REMANDED for further administrative proceedings.

## BACKGROUND

On June 28, 2012, Plaintiff filed an application for DIB under the Act. Tr.[1] 20. Plaintiff alleges disability since May 1, 2011[2] due to a degenerative condition in her knees and feet,

---

[1]    References to "Tr." are to the administrative record in this matter.
[2]    Plaintiff initially alleged disability since June 22, 2012, but amended her onset date to May 1, 2011 at the hearing. Tr. 41-42.

arthritis, and anxiety. Tr. 193. After Plaintiff's application was denied at the initial level, a hearing was held via videoconference before Administrative Law Judge Donald T. McDougall ("the ALJ") on October 11, 2013. Tr. 41-84. At the hearing, Plaintiff appeared with her attorney Regina Walker and testified. *Id.* Esperanza Distefano, a vocational expert ("the VE"), also testified. Tr. 67. On December 17, 2013, after considering Plaintiff's application *de novo*, the ALJ issued a decision finding that Plaintiff is not disabled within the meaning of the Act. Tr. 20-33. That decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on February 12, 2015. Tr. 1-3. Plaintiff then filed this civil action. ECF No. 1.

## LEGAL STANDARDS

### I.       Disability Determination

The Act defines "disability" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d). Social Security Administration ("SSA") regulations outline the five-step process used to determine whether a claimant is "disabled" under the Act. 20 C.F.R. § 404.1520.

First, the ALJ must determine whether the claimant is engaged in any substantial gainful work activity. 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has a "severe" impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the claimant is not disabled. *Id.* If the claimant does, the analysis proceeds to step three.

At step three, the ALJ must determine whether the claimant has an impairment (or combination of impairments) that meets or medically equals one of the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("the Listings").  If the impairment does meet or equal a condition in the Listings and the durational requirement (20 C.F.R. § 404.1509) is satisfied, then the claimant is disabled.  20 C.F.R. § 404.1520(d).  If it does not, the ALJ will make a finding regarding the claimant's residual functional capacity ("RFC"), which is an assessment of what the claimant can still do despite his or her limitations.  20 C.F.R. § 404.1545(a)(1).  The RFC is then used at steps four and five.  20 C.F.R. § 404.1520(e).

The fourth inquiry is whether, given the claimant's RFC, the claimant can still perform his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform his or her past relevant work, the claimant is not disabled.  *Id.*  If he or she cannot, the ALJ proceeds to step five.

At the fifth and final step, the ALJ must consider the claimant's RFC as well as his or her age, education, and work experience to determine whether the claimant can make an adjustment to other work for which there are a significant number of jobs in the national economy.  20 C.F.R. § 404.1520(g).  If the claimant can make an adjustment to other work, then the claimant is not disabled.  *Id.*  If the claimant cannot make that adjustment, then the claimant is disabled.  *Id.*

The burden of proving the first four elements is on the claimant, and the burden of proving the fifth element is on the Commissioner.  *Bush v. Shalala*, 94 F.3d 40, 44-45 (2d Cir. 1996); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## II.        District Court Review

District Court review of the Commissioner's decision is not *de novo*.  *See, e.g.*, *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 416 (W.D.N.Y. 2006) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)).  The Commissioner's decision may only be set aside if it is not

supported by "substantial evidence" or is the product of legal error.  *See, e.g.*, *Miller v. Colvin*, 85 F. Supp. 3d 742, 749 (W.D.N.Y. 2015); *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)).  Substantial evidence means "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Burgess*, 537 F.3d at 127 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)) (internal quotation marks omitted).

## DISCUSSION

I.      **The ALJ's Decision**

In this case, the ALJ analyzed Plaintiff's claim for benefits under the process described above.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date.  Tr. 22.  At step two, the ALJ found that Plaintiff had the following severe impairments: "diabetes, bilateral degenerative joint disease of the knees, status post left total knee replacement, obesity, and bilateral foot pain with hammertoes."  Tr. 19.  At step three, the ALJ found that Plaintiff does not have any impairment or combination of impairments that meets or medically equals a Listings impairment.  Tr. 25.

The ALJ then found that Plaintiff has the RFC to perform sedentary work[3] "except [she] would need a sit/stand option to be able to change positions every twenty to thirty minutes for a brief period."  Tr. 25.

At step four, the ALJ found that Plaintiff's RFC renders her unable to perform her past relevant work as an elementary school teacher and pre-kindergarten teacher.  Tr. 31.

Because Plaintiff was classified as an "individual of advanced age" at the time of her alleged disability onset date,[4] the ALJ then had to determine whether Plaintiff had acquired

---

[3]      "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

"skills" from her past relevant work.  *See* 20 C.F.R. § 404.1568.  The ALJ, relying on testimony from the VE, found that Plaintiff had acquired the following skills: "clerical skills and receptive and expressive communication skills."  Tr. 31.

At step five, the ALJ relied on the VE's testimony that considering Plaintiff's age, education, work experience, and RFC, Plaintiff has work skills from her past relevant work that are transferrable to other occupations with a significant number of jobs in the national economy. Tr. 31.  Specifically, the VE testified (and the ALJ found) that Plaintiff could transfer her work skills to the occupations of Information Clerk and Telephone Solicitor.  Tr. 31-32.  Accordingly, the ALJ found that Plaintiff is not disabled under the Act.  Tr. 32-33.

## II.       Plaintiff's Challenge to the ALJ's Decision

Plaintiff argues that remand is warranted because the ALJ erred in finding that she has transferrable skills under 20 C.F.R. § 404.1568.  ECF No. 6-1, 13-20.  Rather, based on SSA regulations and case law, Plaintiff argues that "receptive and expressive communication" is a *trait* or *aptitude* rather than a "skill."  *Id.*  With respect to "clerical skills," Plaintiff argues that there is not substantial evidence for the ALJ's conclusion that clerical skills transfer to the occupations of Information Clerk or Telephone Solicitor.  *Id.*  The Court agrees.

### 1.       Special Rules for Persons of Advanced Age

When determining whether a person is "disabled" under the Act, special rules apply to persons of advanced age.  Specifically, 20 C.F.R. § 404.1568(d)(4) provides the following:

> If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work . . . that you can do despite your impairment(s).

*Id.*  Section 404.1568(d)(4) further provides that if a claimant meets the above criteria and is limited to no more than *sedentary* work, the following additional rule applies:

---

[4]       Plaintiff was 57 years old at the time.  SSA regulations define someone age 55 or older as a "person of advanced age."  *See* 20 C.F.R. § 404.1563.

> [W]e will find that you have skills that are transferable to skilled or semiskilled work *only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.*

*Id.* (emphasis added).

Here, Plaintiff is classified as a person of advanced age and the ALJ found that she has multiple severe impairments that limit her to no more than sedentary work.  Therefore, to find Plaintiff "not disabled" under the Act, the ALJ was required under 20 C.F.R. § 404.1568(d)(4) to show (1) that Plaintiff acquired "skills" from her past relevant work, (2) that Plaintiff's skills transfer to other skilled or semiskilled sedentary work that she can do despite her impairments, and (3) that the sedentary jobs Plaintiff can now perform are so similar to her past relevant work that she would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.

### 2.    Transferable "Skills" vs. "Traits"

Although "skill" is not defined in the regulations, SSR 82-41 explains the concepts of "skills" and "transferability of skills" in detail.  That ruling provides:

> A skill is knowledge *of a work activity* which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like *making precise measurements, reading blueprints, and setting up and operating complex machinery.* A skill gives a person a special advantage over unskilled workers in the labor market.

SSR 82-41, 1982 WL 31389 at *2 (emphasis added).   SSR 82-41 goes on to explain the difference between a "skill" and a "trait":

> The regulations definition of semiskilled work in regulations sections 404.1568(b) and 416.968(b) states that semiskilled jobs "may require alertness and close attention ... coordination and dexterity ... as when hands or feet must be moved quickly to do repetitive tasks." These descriptive terms are not intended, however,

to illustrate types of skills, in and of themselves. *The terms describe worker traits (aptitudes or abilities) rather than acquired work skills.*

Skills refer to experience and demonstrated proficiency with work activities *in particular tasks or jobs.* In evaluating the skill level of [past relevant work] or potential occupations, *work activities are the determining factors.*

Worker traits to be relevant *must have been used in connection with a work activity.* Thus, in the regulations, the trait of alertness is connected with the work activities of close attention to watching machine processes, inspecting, testing, tending or guarding; and the traits of coordination and dexterity with the use of hands or feet for the rapid performance of repetitive work tasks. *It is the acquired capacity to perform the work activities with facility (rather than the traits themselves) that gives rise to potentially transferable skills.*

*Id.* at \*3 (emphasis added).

In describing the "skills" of a nurse aid and a general office clerk, SSR 82-41 explains that transferable skills are those that give a person an advantage over an unskilled worker in the job market.  *Id.*  Thus, although a nurse aid may clean rooms, change bed linens, and dress clients, the nurse aid's transferable skills would likely include "those related to 'nurse' rather than 'aide'--taking and recording the rates of temperature, pulse and respiration; and recording food and liquid intake and output."  *Id.*  On the other hand, the general office clerk "ordinarily is equally proficient in, and spends considerable time doing, typing, filing, tabulating and posting data in record books, preparing invoices and statements, operating adding and calculating machines, etc. These clerical skills may be readily transferable to such semiskilled sedentary occupations as typist, clerk-typist and insurance auditing control clerk."  *Id.*

In *Draegert v. Barnhart*, 311 F.3d 468 (2d Cir. 2002), the Second Circuit discussed 20 C.F.R. § 404.1568(d)(4) and SSR 82-41 in detail.  There, the ALJ found that Draegert had acquired the following skills from his past relevant work as a security safety officer: (1) "ability to learn and apply rules and procedures, which are sometimes hard to understand" (2) "ability to use reason and judgment in dealing with all kinds of people" (3) "ability to think clearly and react quickly in an emergency" (4) "ability to keep physically fit" (5) "ability to make

conclusions based on facts and on one's personal judgment" and (6) "ability to change easily and frequently from one activity to another."  *Id.* at 469-470.  As a result, the ALJ concluded that Draegert could transfer his acquired skills to the occupations of gate guard and dispatcher.  *Id.*

The Second Circuit in *Draegert* held that "these abilities, *when not linked to any particular tasks*, are merely traits or aptitudes, not job skills, for 'worker traits, to be relevant, must have been used in connection with a work activity.'"  *Id.* at 476 (quoting SSR 82-41) (emphasis added).  Therefore, the ALJ's finding at step five was not supported by substantial evidence. *Id.* at 477.

In *Gittens v. Astrue*, No. 07-cv-1397, 2008 WL 2787723, at *7-8 (S.D.N.Y. June 23, 2008), the vocational expert testified that the claimant had acquired the following skills from past relevant work: "the ability to communicate with others, knowledge and experience of routines of a complex investigation, ability to compute and develop reports, and investigative skills."  The plaintiff argued that these "skills" were merely traits or abilities.  *Id.*  With respect to the communication "skill," the court in *Gittens* found that *Draegert* applied and that "[c]ommunication is certainly an ability or attribute as it is 'too vague to constitute a particular skill which is transferable.'"  *Id.* (quoting *Draegert*, 311 F.3d at 475).  The court in *Gittens* further noted that "the vocational expert made no attempt to connect the attributes to specific work activities."  *Id.*

### 3.      Receptive and Expressive Communication

Here, the ALJ found that Plaintiff had acquired the skill of "receptive and expressive communication" in her past relevant work as an elementary school teacher and a pre-kindergarten teacher.  Tr. 31.  However, based on the law cited above, "receptive and expressive communication" is merely a trait or aptitude and is far too vague to constitute a skill.

As explained in SSR 82-41 and *Draegert*, transferable skills are acquired by performing particular work activities in the claimant's past relevant work. Accordingly, the particular "skills" identified by vocational experts and ALJs must be tied to those work activities rather than phrased so vaguely as to apply to jobs that are vastly different from the claimant's past relevant work. The phrase "receptive and expressive communication" is not tied to any work activity at all. Therefore, the Court holds that "receptive and expressive communication" cannot be considered a transferable skill for the purpose of satisfying 20 C.F.R. § 404.1568(d)(4) and SSR 82-41.

### 4.      Clerical Skills

With respect to "clerical skills," Plaintiff argues that there is not substantial evidence in the record that clerical skills transfer to the occupations of Information Clerk or Telephone Solicitor. ECF No. 6-1, at 19-20.[5] The Court agrees.

At Plaintiff's hearing, when Plaintiff's attorney questioned the VE about what type of clerical skills are required for the Information Clerk occupation, the VE initially testified that clerical skills "are an essential function of that job." Tr. 71. However, the VE then almost immediately backtracked and stated: "I'm very familiar with this job and there really aren't clerical skills that are involved in doing this job. It's primarily being able to communicate clearly when being asked a question of people that are entering the establishment." Tr. 72.

With respect to the Telephone Solicitor occupation, it is unclear whether the VE actually testified that Plaintiff's clerical skills transfer. On direct examination from the ALJ, who asked what skills transfer from Plaintiff's past relevant work to the Information Clerk and Telephone Solicitor jobs, the VE testified that "the individual would definitely use communication skills

---

[5]      At oral argument, Plaintiff also suggested that "clerical skills" is too vague to constitute a transferable skill under the Act. The Court declines to reach this argument. However, the Court does note that the phrase "clerical skills," like "receptive and expressive communication," would seem to encompass an extremely wide variety of work activities and is not tied to any particular work activity that Plaintiff performed in her past relevant work.

that are – the receptive and expressive communication skills.  And they also needed to have clerical skills *in order to keep proper record of a child's progress*."  Tr. 69 (emphasis added).  It is unclear what the VE meant by this, but presumably a Telephone Solicitor would not need to keep proper record of a child's progress.

The second problem with the record regarding the Telephone Solicitor occupation is that, as a person of advanced age who is limited to sedentary work, the regulations require that Plaintiff should not be required to transition to other work unless she "would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. § 404.1568(d)(4).  With respect to the Telephone Solicitor job, the VE testified that this standard was satisfied because (1) Plaintiff would use the same tools, "pen and paper"; (2) Plaintiff would use her "communication skills"; and (3) "the work setting would be at an indoor site, as is the teaching position." Tr. 77.  Without further discussion, the ALJ relied on the VE's testimony in his decision.  Tr. 32.  Thus, because Plaintiff used "pen and paper" and worked at "an indoor site" as an elementary school and pre-kindergarten teacher, the ALJ concluded that Plaintiff would need "very little, if any, vocational adjustment in terms of tools, work processes, work settings, or industry" to become an Information Clerk or Telephone Solicitor.  *Id.*  The Court agrees with Plaintiff that this conclusion is not supported by substantial evidence.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 6) is GRANTED and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 8) is DENIED.   This matter is REMANDED to the Commissioner for further administrative proceedings in accordance with this decision.   *See* 42 U.S.C. § 405(g).   The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 16, 2016
        Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court